**Woodrow McCALLIE,
Plaintiff-Appellant,**

v.

**Jimmy Ray McCALLIE and wife, Dorothy McCallie, Defendants-Appellees.**

Court of Appeals of Tennessee,
Eastern Section.

May 23, 1986.

Permission to Appeal Denied by
Supreme Court Sept. 8, 1986.

Richard L. Banks, Cleveland, for plaintiff-appellant.

J. Lewis Kinnard, Madisonville, for defendants-appellees.

## OPINION

SANDERS, Judge.

The Plaintiff has appealed from a chancery decree dismissing his complaint asking the court to set aside a deed or to declare it to be a mortgage on the property he conveyed to his son for "One Dollar ($1.00) and other consideration to me in hand paid by the said party...."

The Plaintiff-Appellant, Woodrow McCallie, was the owner of a farm in Monroe County consisting of approximately 120 acres. He purchased the farm in 1941 and has lived on it ever since. His son, the Defendant-Appellee, Jimmy Ray McCallie, has also lived on the farm most of his life. The Defendant, Dorothy McCallie, wife of Jimmy Ray, has lived on the farm most of the time since she and Jimmy Ray were married in 1963. Although Jimmy Ray and Woodrow each held other jobs until Woodrow's retirement a few years ago, they jointly farmed the acreage. They primarily raised tobacco and cattle.

On October 23, 1983, Woodrow was involved in an automobile accident with a truck. He apparently was driving one of the vehicles and had a passenger in the automobile with him. He had only a small amount of insurance and became fearful he might be sued and lose his farm and other property. On or about the last day of October he went to his attorney in Madisonville who had represented him in other matters and told him of the accident, his fears about being sued, and that he wanted to convey the farm to his son, Jimmy Ray. The attorney advised him he could sell the farm but if he made a gift of it it could be set aside in the event a judgment were obtained against him. He requested the attorney to prepare a deed to Jimmy Ray showing a consideration of $1.00. He further requested the attorney to date the deed back to October 14, a date prior to the accident. The attorney told him he would date the deed back to that date but he would not be willing to notarize it as of that date. The deed was delivered the following day but there is a dispute as to whether or not it was notarized at the time. There is also a dispute as to whether or not Jimmy Ray was to pay Woodrow for the property.

In January, 1985, Woodrow requested Jimmy Ray to reconvey the property to him. Jimmy Ray refused and that precipitated this litigation.

In his complaint Woodrow alleges that prior to the time he had the deed prepared Jimmy Ray had agreed to pay him $1,000 per acre, or $120,000, for the farm. The Defendants were to give him a note payable at $20,000 per year without interest and the note was to be secured by a deed of trust on the farm. He delivered the signed but unnotarized deed to the Defendants with the understanding they would have a note and deed of trust prepared and delivered to him, at which time he would have the deed notarized. The first installment on the note was due January 20, 1985, but when he asked Jimmy Ray when he could expect to receive a payment he was told none would be forthcoming. He alleged the Defendants fraudulently had the deed notarized and recorded without his knowledge. He asked that the deed be set aside or declared to be a mortgage on

the property to secure the unpaid purchase price.

The Defendants, for answer, denied the deed was not notarized at the time it was delivered to them. They further denied they agreed to purchase the property. They alleged the Plaintiff voluntarily conveyed the property and when he delivered the deed to them for the property it came as a complete surprise to them.

Upon the trial of the case the chancellor found the issues in favor of the Defendants and dismissed the complaint. The Plaintiff has appealed, presenting the following issues for review: "A. Did the Chancellor err in failing to set aside the deed which purportedly conveyed property from the Plaintiff to the Defendants?" and "B. If the Chancellor considered the transaction to be a gift, did he err in failing to set aside the same because of lack of consideration, undue influence, and breach of a confidential relationship?"

We cannot agree with Plaintiff's insistence, and affirm.

The testimony is in irreconcilable conflict as to whether or not the deed had been notarized at the time it was delivered and whether or not Jimmy Ray was to pay Woodrow $120,000 for the farm. Our review of the record reveals the evidence on both of these issues strongly preponderates in favor of Jimmy Ray's insistence and the decree of the chancellor.

Woodrow testified Jimmy Ray had been wanting to buy his farm for some time. They discussed it on October 5 and again on October 14. He, Woodrow, did not agree to the sale on October 14 but told Jimmy Ray he would think about it. After the accident occurred on October 23 he decided it would be advisable to sell the farm because he was told the young man who was riding with him might sue him and take his farm. He further testified that because of this fear he drew some $13,000 out of the bank and hid it under a wash kettle in the yard. He also buried some $10,000. Jimmy Ray learned of this and suggested he turn the money over to Dorothy and let her keep it in a safe deposit box for him, which he did, but she returned the money to him when he requested it. Later he negotiated a settlement of $10,000, without the aid of an attorney, with the owner of the truck that ran into him. Also, the young man who was riding with him was paid by the owner of the truck and he was never sued. He further testified the attorney who drew the deed for him refused to backdate the acknowledgement on the deed to October 14 and, although he had signed the deed, it was not acknowledged at the time of its delivery. He said he told the Defendants at the time he gave them the deed he would have it notarized when they delivered him the note and deed of trust on the farm. He further testified he did not know Mr. Ronald Conley who notarized the deed.

In contradiction of Woodrow's testimony, Dorothy McCallie testified Woodrow brought the deed to her where she was working. It had not been notarized at the time. Although she was a notary public she did not want to notarize it because the deed was made to her husband. Mr. Ronald Conley, who worked with her, was a notary public. She and Woodrow went to him and he took Woodrow's acknowledgment and placed his seal on the deed. Woodrow then gave the deed to her and asked her to give it to Jimmy Ray and requested they record it as soon as possible. She further testified nothing was said about their paying Woodrow for the property.

Mr. Ronald Conley testified he had known Woodrow for some time and that Woodrow and Dorothy came to him in his office and he did notarize the deed.

Jimmy Ray testified he had never discussed buying the farm from Woodrow. On the same afternoon that Woodrow gave the deed to Dorothy, Woodrow was waiting for Jimmy Ray at the mail box as he came

home from work and told him he had deeded him the farm. Jimmy Ray said he "was shocked"; he never anticipated anything like that. Woodrow requested he give him one dollar. Jimmy Ray asked Woodrow to repeat what he had said and after he did Jimmy Ray gave him a one-dollar bill. He testified Woodrow told him to record the deed as soon as possible. He further testified the matter was not discussed again until January, 1985, when Woodrow sent word to him by his, Jimmy Ray's, daughter that he wanted his deed back.

Also, Woodrow's half brother, who lives in the same community, testified that sometime after the conveyance was made Woodrow was at his home telling him about the transfer of the property and exhibited the one-dollar bill Jimmy Ray had paid him for the farm. He said he thought he would have the dollar bill "mounted." He further testified Woodrow told him he should do the same thing to avoid government taxes on his property. His half brother's son, who said he was present at the time, testified to the same effect.

The chancellor, in dismissing the case, said: "The plaintiff was involved in an automobile accident and he made the deed to dispossess himself of the assets in an effort to avoid the results of a possible judgment from a tort case. Although it is the plaintiff's contention that he was persuaded by the son to take such action, this does not appear to be a valid contention. The plaintiff concocted his own scheme, and it would be totally inappropriate for this Court to intervene."

The Appellant relies on *Owens v. Breeden*, 661 S.W.2d 887 (Tenn.App.1983) as supportive of his contention the deed should be set aside on grounds of fraud as a result of a confidential relationship between the parties and inadequate consideration. The *Owens* court found a confidential relationship to exist and that the consideration was inadequate. In the case at bar, however, the court did not make any finding as to a confidential relationship existing.

*Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977) held a normal relationship between a mentally competent parent and an adult child is not a *per se* confidential relationship and raises no preumption of invalidity of a gift from the parent to the child and no *per se* presumption of undue influence. Rather, it found, in order for the presumption to arise, the following elements must be present:

> "[T]here must be a showing that there were present elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor. In such cases the rules require the application of the presumption and the rule of independent advise comes into play."

588 S.W.2d at 848.

The case at bar does not fall within the ambit of the usual case where a parent makes a conveyance to a child and on trial the issue is that of overreaching and undue influence. The issues here are (a) did Woodrow sell the farm to Jimmy Ray for $120,000 or (b) did he convey it to Jimmy Ray for the purpose of placing it beyond the reach of possible judgment creditors. The chancellor found it was the latter, and we agree.

■ A court of equity will leave the parties where they have placed themselves, and will refuse all affirmative aid to either of the fraudulent parties. *See Continental Bankers Life Insurance Co. v. Simmons*, 561 S.W.2d 460 (Tenn.App.1977). "One cannot take advantage of his own wrong." *Winter v. Allen*, 166 Tenn. 281, 284, 62 S.W.2d 51 (1933).

■ In *Thomas v. Hedges*, 27 Tenn.App. 585, 183 S.W.2d 14 (1945), a case quite analogous to the case at bar, the father conveyed his farm to his two sons at a time

when a divorce was contemplated by the father. He subsequently requested the sons to deed the property back to him after the marital discontentment was resolved. The sons refused. The father died and the other surviving children brought suit against the brothers to have the land placed back into the estate. The chancellor held for the plaintiffs. The Court of Appeals reversed and remanded for dismissal. The court said:

"[T]here being no intervening rights of creditors, the deed was good as between the parties and their privies. ....

"And it is settled in this state by an unbroken line of decisions that a party guilty of fraud is not entitled to be relieved from its consequences. *Williams v. Lowe*, 23 Tenn. 62; *Moody v. Fry*, 22 Tenn. 567; *Coleman v. Pinkard*, 21 Tenn. 298, *Sharp v. Caldwell*, 26 Tenn. 415, 416; *Parks v. McCamy*, 40 Tenn. 297; *Hubbs v. Brockwell*, 35 Tenn. 574; see notes to Sec. 7832 of Williams Annotated Code.

"The rationale of the rule is to be found in the two maxims: 'He who comes into equity must come with clean hands'; and 'No one can take advantage of his own wrongs.' Gibson's Suite in Chancery, 42 and 51.

"The fact that the bill ... charges that the defendants participated in the fraud avails the complainants nothing. The applicable maxim is that 'Where parties are equally in the wrong, the condition of the defendants is the stronger.' In such a case, a court of equity declines to intervene, not by way of favoring the defendant, but because public policy requires that the court be not used to enable a party to reap the benefit of his own fraud. See Pomeroy on E.Jur., Sec. 401."

183 S.W.2d 14, at 16 and 17.

The issues are found in favor of the Appellees. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellant.

GODDARD and FRANKS, JJ., concur.