**J.D. BEST, Plaintiff–Appellee,**

v.

**Margaret Delores BEST,
Defendant–Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

April 7, 1989.

Permission to Appeal Denied by
Supreme Court July 3, 1989.

Eugene B. Dixon, Koella & Dixon, Maryville, for defendant-appellant.

Kendred A. White, Madisonville, for plaintiff-appellee.

OPINION

FRANKS, Judge.

The chancellor ordered the property titled to defendant, known as the Broken Arrow property, to be vested in plaintiff. Defendant has appealed, insisting the clean hands maxim bars plaintiff from obtaining the property.[1]

The chancellor pretermitted this issue but determined:

> The plaintiff and defendant were married several years ago. On September 13, 1974, they were divorced. At that time they owned two houses and lots, but as a result of the divorce agreement, Mr. Best conveyed his interest by Warranty Deed to Mrs. Best. The parties remained separated for a few months but gradually resumed their marital relationship. During the entire period, they continued to accumulate property. By 1976, they had resumed full cohabitation ... until the relationship terminated in late 1986 or early 1987.
>
> Evidence revealed that prior to the divorce, Mr. Best had incurred several thousand dollars of indebtedness and also owed some income tax. This Court is convinced that these obligations caused the divorce. Mrs. Best was of the opinion that unless the property was out of the name of the husband both of them stood to lose everything, and it is obvious that the divorce was actually to prevent this loss.

Properties owned at the time of the divorce were placed in defendant's name. Through the plaintiff's testimony, the reasons were revealed:

> Q. What was the reason then that you didn't have your name put on the deeds as an owner? As a lawful owner, please, sir?
>
> A. –

1. The familiar maxim is "he who comes into equity must come with clean hands."

Q. Other than, ah, you told me that your credit was bad. Is that the correct answer? I'll accept that if that's what you're telling me.

A. Not all together that.

. . . . .

A. Well. The truth of it is, ah, between me and Delores both, we hid a lot of untaxed monies, that if it was brought out it could mean probably that both of us could go to jail.

Q. Hid from whom?

A. Internal Revenue Service.

. . . . .

Q. So you're telling me under oath today that the reason you didn't have your name put on these deeds was to avoid, ah, any problem with the IRS?

A. That's right. It was actually hiding tax—untaxed dollars.

Q. Okay. Did you have any creditors that were hot after you at that period of time too? Collection agency—

A. I've had—I've had that again me, which I am having some more again me, that's coming up shortly.

As to the Broken Arrow property awarded to plaintiff, he testified this property was placed in defendant's name because "at that time, my credit was real bad and I had a few tax problems."

Where the action concerns the public as well as the litigants' interests, the doctrine assumes a greater significance since its application not only thwarts the wrongdoer but "averts an injury to the public". 27 Am.Jur.2d, *Equity*, § 136 at 668. We reverse the transfer of the legal title to the Broken Arrow property to plaintiff on the authority of *McCallie v. McCallie*, 719 S.W.2d 150 (Tenn.App.1986) and *Thomas et al. v. Hedges et al.*, 27 Tenn.App. 585, 183 S.W.2d 14 (1944). In *McCallie*, a father was involved in a motor vehicle accident and, in fear of being cast in judgment by the other party to the accident, transferred legal title to his farm to his son. After no suit materialized, the father brought an action to recover legal title to the property because the son refused to reconvey. The *McCallie* court ruled the plaintiff was not entitled to be relieved of the consequences of his acts and explained "[T]he rationale of the rule is to be found in the two maxims: 'He who comes into equity must come with clean hands'; and 'No one can take advantage of his own wrongs.' Gibson's Suits in Chancery, 42 and 51." 719 S.W.2d at 154.

*Gibson's Suits in Chancery*, § 51 (5th ed. 1955), elaborates:

[I]f a contract is affected with fraud, or has a fraudulent purpose, none of the parties to such fraud can have the assistance of the Court either to compel the execution of such contract, or to have it cancelled, or to have the property or interests, transferred thereunder, restored. Equity will leave such parties where they have placed themselves, and will refuse all affirmative aid to either of the fraudulent participants. It is on this principle that the door of a Court of Equity is always shut against a debtor when he seeks to recover back property he has conveyed to hinder, delay or defraud his creditors. *Id.*, at 63–4.

Also *Pomeroy's Equity Jurisprudence* (5th ed.) speaks with the same finality:

§ 401a. *Conveyances in Fraud of Creditors and Others*. One of the most common occasions for the enforcement of this rule arises in cases where a debtor has conveyed or assigned or in any manner transferred his property for the purpose of defrauding his creditors, and afterwards seeks to set aside the transfer as against the grantee or assignee and recover back the property. The door of a court of equity is always shut against such a claimant.

Plaintiff relies on the case of *Nolen et al. v. Witherspoon et al.*, 182 Tenn. 333, 187 S.W.2d 14 (1945), which recognizes the application of the clean hands maxim is subject to limitations. The facts of *Nolen* are inapposite and establish no basis to proscribe the application of the maxim to the facts of the case *sub judice*.

The judgment of the chancery court is reversed as to the transfer of the real estate from the defendant to plaintiff. The remainder of the judgment is affirmed and the cause is remanded to the trial court for the entry of a judgment consistent with this opinion.

The costs of appeal are assessed to J.D. Best.

SANDERS, P.J. (E.S.), and GODDARD, J., concur.