IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## BILL D. WRIGHT v. BONNIE S. HULL

**Appeal from the Chancery Court for Fentress County**
**No. 98-37     Billy Joe White, Chancellor**

_____

**No. M1999-02307-COA-R3-CV  - August 16, 2000**

_____

Plaintiff/Appellee, Bill D. Wright, sued to set aside a 1986 deed whereby he conveyed a certain tract of land to Defendant/Appellant, Bonnie S. Hull.  He charged failure of consideration and fraud. Defendant, Ms. Hull, asserted that she and Mr. Wright cohabited without marriage for twelve years until their separation in 1998.  She asserted that the property conveyance was a gift and was also conveyed to her by Mr. Wright to put the property out of the reach of his creditors.  The trial court held the parties to be equal tenants in common and ordered the property sold.  We reverse the trial court and dismiss the case.

### Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Reversed.

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

S. N. Garrett, Jamestown, Tennessee, for the appellant, Bonnie S. Hull.

### OPINION

Bill D. Wright ("Plaintiff") filed suit against Bonnie S. Hull ("Defendant") on April 24, 1998 alleging that he and Defendant, although never married, began living with each other in 1982 and conducting themselves as husband and wife until their separation in late 1997.  Plaintiff had been previously married and had received a certain tract of land in Fentress County, Tennessee by quitclaim deed in settlement with his former wife.  The property was encumbered by a mortgage through Farmer's Home Administration in the name of Plaintiff only.  He asserts that the parties sought advice of counsel and reached an agreement whereby Plaintiff would convey the property to Defendant and that simultaneously Defendant would convey the property back to him with neither deed being recorded.  The deed from Plaintiff to Defendant, however, was recorded on October 15, 1986.  The alleged deed back from Defendant to Plaintiff appears no where in the record.  Plaintiff therefore claims a breach by Defendant of this rather nebulous agreement to reconvey.

In answer, Defendant admits the relationship of the parties but denies the agreement either to reconvey or not to record the conveyance from Plaintiff to Defendant.  She admits that Plaintiff

continued to make the Farmer's Home payments while they cohabited. She further asserts that Plaintiff is barred from equity by unclean hands in that "he told the defendant that she had earned this home . . . by being a good housewife and housekeeper for the plaintiff for many years and that he had creditors that he was afraid might take the home if he left the home in his name so he was giving it to the defendant."

The testimony in the case is almost entirely limited to that of Plaintiff and Defendant. Plaintiff had sought the advice of Thomas Coleman, an attorney, and Plaintiff testified regarding this advice as follows:

> Q. All right. It - - do you remember going to Tom Coleman's office and doing this deal to try to hide this property from your creditors?
>
> A. I wasn't trying to hide it, he just said this would work.
>
> Q. All right. This would work to keep - -
>
> A. - - keep them from trying to take it away, you know - -
>
> Q. - - it would work to keep the creditors from taking the property away from you?
>
> A. Debt. The debt was a debt with Jane Gooseman, my first wife. When we built the house, it tell right in here what - - Jane, we built the house.
>
> Q. - - yes, sir.
>
> A. - - so she went in debt with another man and bought a lot of stuff from Baylou's - -
>
> Q. - - I understand.
>
> A. - - and that's the debt.
>
> Q. I understand that. In the final divorce decree, there's listed out a bunch of debt that for some reason you took over and they were trying to collect from you, is that right?
>
> A. Well, the debt took over - - they didn't read that it was and my debt was supposed to not have been stuck with hers but they still tried to stick me with her debt even after we got divorced. They tried to claim they didn't get the paper in time or didn't get notified in time.

Q. Okay. So the people that you and Jane owed together, or that maybe just Jane owed - -

A. - - yeah.

Q. - - during your divorce - - during your marriage to Jane, were trying to collect that the money Jane owed them, from you, is that right?

A. Uh-huh.

Q. So Tom was trying to put this property in Bonnie's [(Defendant's)] name to keep Jane's debtors from trying to collect it from you?

A. Yeah, something like that.

This testimony of Plaintiff is buttressed by the equally strong testimony of Defendant and forms the basis for the trial court's final conclusion wherein the record reflects:

> THE COURT: The facts of this case are that Mr. Wright conveyed this property to Ms. Hull in 1986 to defeat creditors and perhaps to take care of Ms. Hull if he died whereupon she would not have inherited the house. Ordinarily, in a case like this the Courts leave the parties where they are because it's probably a fraudulent conveyance.

The difficulty with the action of the trial court is that after making a clear finding of fact supported by the record that the conveyance was intended to defeat creditors, the trial court goes on to say:

> But this case is a little different from the usual in that since that conveyance in 1986 Mr. Wright has continued to make the payments and does so up till this date. So I think the equitable thing to do in this property is to declare that these parties are tenants in common in this property each owning 50 percent subject to the mortgage.

It is in this respect that the trial court is in error. Except for the value of the property, there is little difference between this case and *McCallie v. McCallie*, 719 S.W.2d 150 (Tenn. Ct. App. 1986). In *McCallie*, a father had an automobile accident in which a passenger in his vehicle was hurt. Fearing that he would be sued, he conveyed his $120,000.00 farm to his son without consideration and then, when the suit did not materialize, demanded of the son that he reconvey the property. Upon the son's refusal, the father brought suit against him. This court held:

> The case at bar does not fall within the ambit of the usual case where a parent makes a conveyance to a child and on trial the issue is that of overreaching and undue influence. The issues here are (a) did [the father] sell the farm to [the son] for $120,000 or (b) did he convey it to [the son] for the purpose of placing it beyond the

reach of possible judgment creditors. The chancellor found it was the latter, and we agree.

A court of equity will leave the parties where they have placed themselves, and will refuse all affirmative aid to either of the fraudulent parties. *See Continental Bankers Life Insurance Co. v. Simmons*, 561 S.W.2d 460 (Tenn. App. 1977). "One cannot take advantage of his own wrong." *Winter v. Allen*, 166 Tenn. 281, 284, 62 S.W.2d 51 (1933).

*McCallie*, 719 S.W.2d at 153.

In *Thomas v. Hedges*, 27 Tenn. App. 585, 183 S.W.2d 14 (1944), a case quite analogous to the case at bar, the father conveyed his farm to his two sons at a time when a divorce was contemplated by the father. He subsequently requested the sons to deed the property back to him after the marital discontentment was resolved. The sons refused. The father died and the other surviving children brought suit against the brothers to have the land placed back into the estate. The chancellor held for the plaintiffs. The Court of Appeals reversed and remanded for dismissal. The court said:

> [T]here being no intervening rights of creditors, the deed was good as between the parties and their privies. . . . .
>
> And it is settled in this state by an unbroken line of decisions that a party guilty of fraud is not entitled to be relieved from its consequences. *Williams v. Lowe*, 23 Tenn. 62; *Moody v. Fry*, 22 Tenn. 567; *Coleman v. Pinkard*, 21 Tenn. 185; *Mulloy v. Young*, 29 Tenn. 298; *Sharp v. Caldwell*, 26 Tenn. 415, 416; *Parks v. McCamy*, 40 Tenn. 297; *Hubbs v. Brockwell*, 35 Tenn. 574. . . .
>
> The rationale of the rule is to be found in the two maxims: "He who comes into equity must come with clean hands"; and "No one can take advantage of his own wrongs." Gibson's Suit[s] in Chancery, 42 and 51.
>
> The fact that the bill . . . charges that the defendants participated in the fraud avails the complainants nothing. The applicable maxim is that "Where parties are equally in the wrong, the condition of the defendants is the stronger." In such a case, a court of equity declines to intervene, not by way of favoring the defendant, but because public policy requires that the court be not used to enable a party to reap the benefit of his own fraud.

*Thomas*, 183 S.W.2d at 16-17 (citations omitted); *McCallie*, 719 S.W.2d at 153-54.

-4-

In the case at bar, the chancellor found that the conveyance by Plaintiff to Defendant was made at least, in part, to defeat creditors. In keeping with settled Tennessee law, we leave these parties where we found them. *Continental Bankers Life Ins. Co. v. Simmons*, 561 S.W.2d 460 (Tenn. Ct. App. 1977).

It is also appropriate to note that the Plaintiff apparently has abandoned his appeal as he filed no brief in the case and the record shows only a late-filed letter from his former counsel that he did not "wish to defend this appeal."

The judgment of the trial court is reversed, and the case is dismissed at the cost of Plaintiff, Bill Wright. The case is remanded to the trial court for the collection of costs.

_____
WILLIAM B. CAIN, JUDGE