THOMAS et al. v. HEDGES et al.—183 S. W. (2d) 14.

Western Section.   March 22, 1944.

Petition for Certiorari denied by Supreme Court, July 1, 1944.

586

Maddox, Maddox & Maddox, of Huntingdon, for complainants.

W. H. Denison, of Lexington, for defendants.

ANDERSON, P. J.   William Hedges died intestate in Carroll County on the 28th day of December, 1928, leaving several surviving children, but no widow.   The original bill was filed by two of the children against the others, asking a sale for partition of a tract of land of which it is alleged the said William A. Hedges was seized and possessed at the time of his death and which, it is asserted, passed to his children by descent.   It is also averred that

the land was in the possession of two of the defendants, Joe and William Hedges, who were using the same and cutting the timber therefrom, which they had no right to do; and it is charged that the complainants are entitled to their pro rata share of the proceeds arising from the sale of any timber that had been sold. A pro confesso was taken against the defendants, Avery Hedges and Mrs. Dola Hedges Ritter. The remaining defendants, Joe and Willie Hedges, filed a joint and separate answer in which they admit that they were living on the land, but deny that William Hedges had any interest in the land at the time of his death and deny that the complainants had any interests in the land at the time the bill was filed.

The case proceeded to proof and after some of the depositions had been taken, it developed that the intestate, William Hedges, had by deed, dated November 23, 1912, conveyed the land to the defendants Joe and Willie Hedges, reserving to himself a life estate therein and that this deed had been duly placed of record in the Register's office on November 1, 1913. When this developed, the complainants, upon leave of the court, filed an amended bill in which they set up the execution of the deed, its registration, the oversight in failing to discover it before the filing of the original bill, and charge that there was no sufficient consideration for the deed; that its execution by the grantor was a ''scheme and a fraud'' to put the land beyond the reach of the grantor's then wife, who was threatening to sue him for a divorce and alimony, and that ''the conveyance by the said William Hedges, to his said two sons was to cover up said property.'' In the same connection it is also charged that the marital trouble ''blew over'' and the ''grantor went to his sons and made

an effort to get said deed, or to get them to surrender said deed to him and to convey said land back to him which they declined and refused to do.'' It is then averred ''upon information and belief, that it was the intention and desire of the said William Hedge for all of his children to share alike in his property, and had been so announced by him to and among his neighbors.'' It is also charged that the acknowledgment ''was not sufficient and ineffactual (sic)'' and that therefore the deed ''was void and without force and effect.''

The defendants, Joe and Willie Hedges, filed a joint demurrer to the amended bill, in which they in substance maintained that there was no equity therein, because the relief sought was essentially based on the fraud of the complainant's ancestor by which complainants, claiming only through him, were bound. The demurrer was overruled with the right to rely thereon in the answer. Thereafter an answer to the bill as amended was filed by the defendants, Joe and Willie Hedges, in which after reiteration of the grounds of demurrer, they admit the execution of the deed but deny that there was any fraud in connection therewith.

The case then proceeded to proof upon a consideration of which the chancellor held that the deed was fraudulent and void as charged in the amendment to the bill, ''and not sufficient to pass title to Joe and William Hedges.''

His conclusion as to this feature of the controversy was in the following language: ''This conveyance was a fraudulent scheme participated in by both of these defendants, and it is evident that Bill Hedges did not regard the conveyance as binding, and really intended for all of his children to share in this land at his death.''

A decree was accordingly passed, setting aside the deed and adjudicating that the complainants and the defendants were the owners of the land as tenants in common by inheritance from their father. The cause was accordingly referred to the master to determine whether the land could be partitioned in kind and for an accounting for rents and profits. This decree was entered of April 9, 1943. In due time the master reported that the land should be sold for partition in kind and that rents and proceeds accruing since the death of William Hedges Sr. were $750. This report was confirmed by a final decree rendered on August 5, 1943, and the land was ordered sold for partition. From this decree the defendants, Joe and William Hedges, prayed and were granted an appeal to this court, which was duly perfected.

Complainants have filed a written motion to dismiss the appeal on the grounds that it was too late. The contention is that the appeal should have been prayed from the decree entered on April 19, 1943.

The motion is disallowed. The defendants were not required to appeal until a final decree was rendered disposing of all the issues raised by the pleadings. Mengle Box Co. v. Lauderdale County, 144 Tenn. 266, 230 S. W. 963; Cockrill v. People's Sav. Bank, 155 Tenn. 342, 293 S. W. 996; Gamble v. Branch (Tenn. Ch. App.), 52 S. W. 897.

A decree is final when it so far disposes of the cause that nothing remains to be done but the issuing of the final process or the taking of other ministerial steps necessary to carry the decree into effect. Gibson Suits in Chy., Sec. 265. In the present case, the decree of April 19, 1943, was obviously an interlocutory decree. It was not final either in form or in substance. It referred the

cause to the master to hear proof to determine whether the land could be partitioned in kind, an issue raised by the pleadings, and necessary under the statute to be determined before there could be a sale for partition. It also required a report as to rents and profits accruing since the death of the intestate. We think it too clear for argument that this was not such a decree as that an appeal therefrom would lie as a matter of right. Authorities, supra.

The case of Cates v. McKenzie, 176 Tenn. 313, 141 S. W. (2d) 471, is not authority for a contrary view. The ruling there was that an order of sale involving a mere ministerial act by way of enforcement of a decree which terminated the merits of the litigation, did not operate to prevent the decree from being a final one, within the meaning of the statute requiring an application for a writ of error coram nobis to be made within a year after the rendition of the decree sought to be reviewed. Obviously, the order of reference in the present case required more than a mere ministerial act on the part of the Clerk & Master.

We proceed therefore to dispose of the questions presented by the assignments of error. The first is that the chancellor erred in not sustaining the demurrer to the amended bill. This assignment is well made. Other questions aside, there being no intervening rights of creditors, the deed was good as between the parties and their privies. The relief sought by the amended bill was essentially based upon the averments of fraud on the part of the complainant's ancestor. By this fraud, complainants are bound; for, since they claim only through him, they stand upon no higher ground than he did. The test is whether the ancestor, if alive, could have repudiated the deed upon a charge that he had executed it for the

fraudulent purpose of defeating a claim for alimony by his wife. If he could not do this, then the complainants as his heirs could not; for they are in privity of estate with him. They claim only through him as heirs, and hence have no higher or greater right than he had. Battle v. Street, 85 Tenn. 282, 2 S. W. 384; Bank v. Haller, 101 Tenn. 83, 52 S. W. 807.

And it is settled in this state by an unbroken line of decisions that a party guilty of fraud is not entitled to be relieved from its consequences. Williams v. Lowe, 23 Tenn. 62; Moody v. Fry, 22 Tenn. 567; Coleman v. Pinkard, 21 Tenn. 185; Mulloy v. Young, 29 Tenn. 298; Sharp v. Caldwell, 26 Tenn. 415, 416; Parks v. McCamy, 40 Tenn. 297; Hubbs v. Brockwell, 35 Tenn. 574; see notes to Sec. 7832 of Williams Annotated Code.

██ The rationale of the rule is to be found in the two maxims: "He who comes into equity must come with clean hands"; and "No one can take advantage of his own wrongs." Gibson's Suits in Chancery, 42 and 51.

██ The fact that the bill as amended charges that the defendants participated in the fraud avails the complainants nothing. The applicable maxim is that "Where parties are equally in the wrong, the condition of the defendants is the stronger." In such a case, a court of equity declines to intervene, not by way of favoring the defendant, but because public policy requires that the court be not used to enable a party to reap the benefit of his own fraud. See Pomeroy on Eq. Jur., Sec. 401.

This rule is applicable except in cases where there are present other paramount considerations of public policy that require a different result.

██ The bill as amended avers that: "There was no valuable sufficient consideration expressed in the deed at the time it was written and signed." This averment

is futile. It was not essential to the validity of the deed that a consideration therefor be expressed. As a matter of fact, the deed recited the consideration of love and affection and the amendment to the bill so charges. This, as between the parties, was a good consideration and sufficient to support the conveyance.

██ ██ As before stated, the amendment charges, as one ground of relief, that the acknowledgment of the deed was insufficient and ineffectual and did not comply with the law requiring such acknowledgments and was therefore "void and without effect." This averment is also futile. A compliance with the statutory requirements as to the authentication of deeds and other instruments by acknowledgment is necessary only to a valid registration. Acknowledgment adds nothing to such an instrument as between the parties; for all instruments required by law to be acknowledged and registered are good as between the parties and their privies without acknowledgment and registration. Fidelity Mutual Life Ins. Co. v. Wall, 167 Tenn. 207, 68 S. W. (2d) 108.

We see no escape form the conclusion that the demurrer should have been sustained.

██ ██ However, the result would be the same upon a consideration of the merits of the case. So far from remedying the fatal defect in the averments of the bill as amended, the evidence adduced by the complainants themselves fully supported the charge that the deed was fraudulent, having been executed for the sole purpose of covering up the conveyed property, which was all the grantor had, so as to defeat the rights of the wife in an expected claim for alimony. In the absence of any evidence on the question, the claim must be presumed to have been well grounded. Cf. Mulloy v. Young, 29 Tenn. 298; Rowland v. Rowland, 34 Tenn. 543; Swann v.

Castleman, 63 Tenn. 257. Indeed, had it been otherwise, there would have been no occasion to attempt to cover up the property. ·

The contention is made that there was no delivery of the deed, but this is not borne out by the pleadings or the proof, apart from the presumption arising from the registration for more than twenty years. Hall v. Gossom, 144 Tenn. 1, 228 S. W. 1039. The amendment to the bill charges that the grantor in the deed ''went to his sons and made an effort to get said deed back or to get them to surrender said deed to him and to convey said land back to him, which they declined and refused to do,'' which necessarily implies that the deed had been delivered and as indeed the proof shows.

The result is that the decree of the chancellor is reversed, the demurrer is sustained and the bill as amended dismissed at the cost of the complainant.

Ketchum and Baptist, JJ., concur.