IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 22, 2001

**THELMA AGNES SMITH v. DAVID PHILLIP RILEY**

**Appeal from the Chancery Court for Monroe County**
**No. 12,586     Jerri S. Bryant, Chancellor**

**FILED JANUARY 30, 2002**

**No. E2001-00828-COA-R3-CV**

The plaintiff, Thelma Agnes Smith, lived with the defendant out of wedlock for several years. When the relationship ended, she brought this action seeking to enforce two written agreements with him regarding the sale and assignment of property to her. The trial court enforced the agreements and divided the parties' property. The defendant appeals, arguing that the agreements lack consideration and are void as against public policy. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Robert W. White, Maryville, Tennessee, for the appellant, David Phillip Riley.

J. Reed Dixon, Sweetwater, Tennessee, for the appellee, Thelma Agnes Smith.

Steve Merritt, Maryville, Tennessee, for the appellees, Jerry Strickland and Wanda Strickland.


**OPINION**

I.

Thelma Agnes Smith and David Phillip Riley, both of whom then resided in Florida, separated from their respective spouses in 1997 and began a romantic relationship. In early 1998, the two moved to Tennessee and began cohabiting. They were both then still married.

Smith and Riley opened a joint checking account in March, 1998. Over time, Smith deposited into that account $9,500 – the proceeds from an insurance settlement and monies received when her divorce later became final; she also deposited her monthly social security check of $337

into the same account. Smith continued to deposit her social security check in the joint account until December, 1998, when she opened her own checking account. Riley also contributed to the joint account. He placed a settlement of $84,000 from the Veteran's Administration into the account. In addition, he deposited his monthly pension check of $2,036 into the same account.

Smith and Riley had met with an attorney in the spring of 1998 to discuss the possibility of pooling their money to purchase real property. They inquired about the potential effect that such a purchase might have on their then-pending divorces,[1] *i.e.*, whether their spouses would be entitled to share in their respective interests. Despite their attorney's ambivalence about their intended course of action, Smith and Riley persisted with their plans to purchase property in a manner which would, in the attorney's words, "leave no public trail." On July 31, 1998, Riley entered into a lease with Jerry Strickland and Wanda Strickland[2] with respect to a residence owned by them; the lease was accompanied by an option to purchase. Almost four months later, on November 20, 1998, Smith and Riley returned to their attorney's office, at which time the attorney prepared a bill of sale and an assignment. In the bill of sale, Riley transferred a one-half undivided interest in seven items of personal property,[3] with a right of survivorship as to the one-half interest retained by Riley. Riley also assigned to Smith a one-half undivided interest in the lease and option to purchase with the Stricklands, which interest included a right of survivorship in the one-half interest retained by Riley as well. The property Riley sold and assigned to Smith in the two agreements was stated in each to be "[f]or and in consideration of the sum of One Dollar ($1.00) and other and good and valuable consideration, the sufficiency of which is hereby acknowledged...."

When Smith and Riley separated in April, 1999, Smith filed suit against Riley in the trial court, seeking the dissolution of their "domestic partnership." Smith alleged that she and Riley had been living together for several years without the benefit of marriage and had acquired both real and personal property, some of which Riley had assigned to her. As a result, she asked the court to award her 50 percent of the "partnership" assets, leaving the other 50 percent to Riley. Smith also sought a restraining order to keep Riley from removing or disposing of any of the parties' personal property. The trial court granted the restraining order on April 6, 1999. However, subsequent to the issuance of the restraining order, Riley moved two automobiles, a tractor, and a motor home to Florida. At the final hearing, Riley asserted that his actions were prompted by a bank repossession and a Florida restraining order with respect to the vehicles.

---

[1] Smith's divorce was final on February 1, 1999, while Riley's divorce was granted on July 13, 1999.

[2] Wanda Strickland is Smith's daughter. Smith brought a complaint in the instant case against the Stricklands, alleging, *inter alia*, that they had refused to accept the house payments Smith was sending to them via certified mail. In their answer, the Stricklands agreed to accept the payments through their attorney. The Stricklands' interest in this case was resolved by the trial court, and neither Riley nor Smith appeal the trial court's ruling as to the Stricklands. Thus, while the Stricklands are parties to this appeal, no issues have been raised as to them.

[3] Riley granted Smith a one-half undivided interest in three boats, two automobiles, a tractor, and a motor home.

At the final hearing on November 1, 2000, Riley testified that he was too ill on November 20, 1998, to have knowingly signed the documents that gave Smith a 50 percent interest in the real and personal property. However, in issuing its ruling, the trial court addressed Riley and stated, in pertinent part, as follows:

> [Y]ou knew what you were doing when you went to [your attorney's] office. You know you did. You know you did, and I'm finding that, finding you were not sick. And even if you were sick you knew what you were doing.
>
> Everybody knew what was going on in this case. Even the Stricklands knew what was going on in this case, and they're certainly not here in an easy situation.

The trial court went on to find that this was not a case involving the dissolution of a domestic partnership. The trial court stated, "[i]t's not a divorce, and it's not a partnership dissolution; it's a mess." The court held Riley in contempt for his violation of the restraining order. The trial court then entered a judgment dividing the personal property between Riley and Smith. Because Riley had removed the four vehicles in question to Florida, the court awarded Smith the three boats, among other items of personal property. Riley was awarded the two automobiles, the tractor, and the motor home, among other things.

As for the parties' residence, the court ordered that the house be sold. From the proceeds of the sale, the Stricklands were to be paid the remainder of what they were owed. After the payment to the Stricklands, the court ordered that Smith be repaid for all payments she had made on the house, including principal and interest, as well as for all taxes and insurance payments she made on the property. The court also ordered that Smith receive $33,500, to equalize the value of the specific property awarded by the court. If any money remained, the court decreed it was to be divided equally between the parties.

With respect to Riley's contention that there was no consideration for the assignment and bill of sale, the court stated:

> The consideration I find for these assignments and bill of sale was the society and consortium as well as the cash that Ms. Smith put into this agreement, put into this relationship and assets.... I find that Mr. Riley intended this house and his personal property dealt with in the bill of sale and the assignment were intended to be a place for him and Ms. Smith to live, that he did make a promise to take care of her, that he has not done so, and by the consideration that she's given in this relationship that she is entitled to her half of what was on there.

Riley appeals the trial court's ruling, arguing that the trial court erred (1) by finding valid consideration to enforce the contract, and (2) by failing to find the contract to be void due to public policy.

## II.

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). We must honor this presumption unless we find that the evidence preponderates against those findings. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not accorded the same deference. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

## III.

## A.

Riley first argues that the trial court erred in finding that the bill of sale and assignment are supported by valid consideration. Specifically, Riley relies on Smith's statements at trial that she considered their pending engagement and the funds she deposited into their joint account to be consideration for their agreements.

It is a well-settled principle of contract law that in order for a contract to be binding, it must, among other things, be supported by sufficient consideration. *See Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). In expounding on the adequacy of consideration, the Tennessee Supreme Court has stated that

> [i]t is not necessary that the benefit conferred or the detriment suffered by the promisee shall be equal to the responsibility assumed. Any consideration, however small, will support a promise. In the absence of fraud, the courts will not undertake to regulate the amount of the consideration. The parties are left to contract for themselves, taking for granted that the consideration is one valuable in the eyes of the law.

*Danheiser v. Germania Sav. Bank & Trust Co.*, 137 Tenn. 650, 660-61, 194 S.W. 1094, 1096 (1917). Quoting the United States Supreme Court, the Tennessee Supreme Court went on to state that "[a] stipulation in consideration of $1 is just as effectual and valuable a consideration as a larger sum stipulated for or paid." *Id.* (quoting *Lawrence v. McCalmont*, 43 U.S. (2 How.) 426, 452, 11 L. Ed. 326 (1844)). Indeed, the consideration of love and affection has been deemed sufficient to support a conveyance. *See Thomas v. Hedges*, 27 Tenn. App. 585, 593, 183 S.W.2d 14, 17 (1944).

Both the bill of sale and the assignment recite that they are undertaken "[f]or and in consideration of the sum of One Dollar ($1.00) and other and good and valuable consideration, the sufficiency of which is hereby acknowledged...." Facially, the documents are therefore supported by sufficient consideration, as clearly recognized by the Supreme Court in *Danheiser*, 194 S.W. at 1096. Moreover, Smith's "society and consortium" – a concept comparable to the love and affection alluded to in *Thomas*, 183 S.W.2d at 17 – is further evidence of sufficient consideration to support these conveyances.

Riley calls our attention to Smith's statement at trial that she considered the funds she deposited into their joint account to be consideration for the conveyances. If this were the only consideration involved in this case, Riley's argument regarding past consideration supporting a present transaction might have some merit. However, the recitals of nominal consideration that are present in both agreements, as well as the consideration of Smith's love and affection, are adequate consideration and will support the conveyances represented by the assignment and bill of sale.

B.

Riley next argues that the bill of sale and assignment to Smith are void as against public policy. In support of his argument, Riley relies on two Tennessee Supreme Court cases from the early 1900s that found a promise to marry and a promise of marriage as an inducement for sexual intercourse are both void as against pubic policy.[4] It is Riley's contention that the facts of these two Supreme Court cases are closely analogous to the facts of this case, since the agreements now before us were signed while both parties were still married to others and while they were engaged to one another. Therefore, Riley argues, the agreements he entered into with Smith should be declared void as against public policy, and the parties should be placed in the positions they occupied before the execution of the contracts.

It is our opinion that Riley's reliance on these cases is misplaced. Smith did not sue Riley for breach of a promise to marry. Rather, Smith sued Riley to enforce the agreements for a one-half interest in Riley's real and personal property. Certainly, there is no prohibition against two unmarried parties entering into a contract while they are married to others. If that were the state of the law, no married person could ever enter into a contract with anyone other than his or her spouse. As this case does not involve a breach of promise to marry, we find that Riley's public policy argument is without merit.

C.

In the instant case, the parties entered into agreements with the rather clear intent of defeating or at least hindering the interests of their then-respective spouses. A similar situation arose in the case of *Thomas v. Hedges*, 27 Tenn. App. 585, 183 S.W.2d 14 (1944), in which a father, who was

---

[4] The cases relied upon by Riley are *Spellings v. Parks*, 104 Tenn. 351, 58 S.W. 126 (1900), and *Johnson v. Iss*, 114 Tenn. 114, 85 S.W. 79 (1905).

contemplating divorce, deeded a farm to his two sons. *Id.* at 588, 183 S.W.2d at 15. Once his marital problems were resolved, the father asked his sons to reconvey the farm to him, but they refused. *Id.* at 588-89, 183 S.W.2d at 15. After the father died, his other surviving children sued the brothers, requesting that the farm be placed back in their father's estate. *Id.* at 587, 183 S.W.2d at 15. The trial court found for the plaintiffs, but the Court of Appeals reversed, holding that, as there were no intervening creditor's rights to the property, "the deed was good as between the parties and their privies." *Id.* at 590, 591, 183 S.W.2d at 15, 16. The court went on to say:

> And it is settled in this state by an unbroken line of decisions that a party guilty of fraud is not entitled to be relieved from its consequences.
>
> The rationale of the rule is to be found in the two maxims: "He who comes into equity must come with clean hands"; and "No one can take advantage of his own wrongs."
>
> The fact that the bill as amended charges that the defendants participated in the fraud avails the complainants nothing. The applicable maxim is that "Where parties are equally in the wrong, the condition of the defendants is the stronger." In such a case, a court of equity declines to intervene, not by way of favoring the defendant, but because public policy requires that the court be not used to enable a party to reap the benefit of his own fraud.

*Thomas*, 27 Tenn. App. at 592, 183 S.W.2d at 16-17 (citations omitted). If, as appears from the record before us, Smith and Riley were attempting to play a rather sophisticated game of "keep-away" from their respective spouses, we would be disinclined to undo, as between the parties, what they clearly intended to do. However, since this particular issue was not raised below, we do not resolve this case based on the rationale of *Thomas* but rather for the reasons and on the bases previously stated.

IV.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the judgment and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, David Phillip Riley.

_____
CHARLES D. SUSANO, JR., JUDGE