IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2003 Session

## MICKIE R. McBEE v. J. LYNN NANCE

**Appeal from the Chancery Court for Anderson County**
**No. 01CH1788     William E. Lantrip, Chancellor**

**FILED JANUARY 28, 2004**

**No. E2003-00136-COA-R3-CV**

Mickie R. McBee ("Plaintiff") signed a Promissory Note evidencing an indebtedness to J. Lynn Nance ("Defendant") in the amount of $15,000. The Promissory Note ("Note") was secured by a Deed of Trust on Plaintiff's house. After Plaintiff failed to make any payments on the Note, Defendant foreclosed on the house. Plaintiff then filed this lawsuit challenging the adequacy of the consideration supporting the Note. At trial, Defendant testified to various cash loans he made to Plaintiff which he claimed constituted adequate consideration for the Note. Plaintiff claimed these were gifts, not loans. The Trial Court concluded the Note was supported by adequate consideration and dismissed the complaint. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Mickie R. McBee, *pro se* Appellant.

Kenneth W. Holbert, Knoxville, Tennessee, for the Appellee J. Lynn Nance.

# OPINION

## Background

Plaintiff filed a Complaint for Injunctive Relief in October of 2001. According to the complaint, Plaintiff and Defendant began dating in 1998. While they were dating or otherwise on good terms,[1] Plaintiff experienced financial difficulties and was considering filing for bankruptcy. Plaintiff claims Defendant convinced her that he could protect her house if she filed for bankruptcy if she would sign a promissory note showing an indebtedness to Defendant. Plaintiff alleged that because of her financial duress, she executed the Note in July of 1998 showing an indebtedness to Defendant in the amount of $15,000. Plaintiff stated in her complaint that the Note she signed contained language to the effect that if she did not file for bankruptcy or take any other action on or before January 1, 1999, then the Note would become void and of no effect. Plaintiff denied receiving any consideration to support the Note, much less $15,000. Plaintiff never filed for bankruptcy. In February of 2001, she received a letter from Defendant's attorney demanding payment. Plaintiff did not make any payments toward the Note and in September of 2001, she learned that Defendant had foreclosed on the Deed of Trust which allegedly secured the Note. Plaintiff denied ever executing a Deed of Trust. After Plaintiff received a letter demanding that she vacate the property, she filed this lawsuit seeking, among other things, an injunction prohibiting Defendant from evicting her from her house.

Defendant filed an answer and admitted Plaintiff had financial difficulties. Defendant maintained, however, that he and Plaintiff discussed the potential of her filing for bankruptcy as well as "Plaintiff's indebtedness to the Defendant for financial assistance that Defendant provided to the Plaintiff …." According to Defendant, these discussions resulted in Plaintiff's executing the Note at issue, which Defendant claimed was supported by adequate consideration. Defendant also claimed there was a valid Deed of Trust securing the Note, and that he foreclosed on the property after providing Plaintiff with proper notice after Plaintiff defaulted on the Note.

Defendant attached to his answer a copy of the Promissory Note which provides in relevant part as follows:

> For value received, I, **MICKIE R. MCBEE, unmarried**, promise to pay to the order of **J. LYNN NANCE** the principal sum of **FIFTEEN THOUSAND DOLLARS AND 00/100 ($15,000)** with no interest.
>
> This note is due and payable as follows: Payable within thirty days of demand, but in no event before January 1, 1999. There shall be no penalty for prepayment of this contract.

---

[1] Plaintiff also alleges that Defendant began to harass her after she and Defendant ceased dating, and that she eventually had to obtain an order of protection.

THE MAKER will pay, on demand, any attorney's fees and related expenses that the holder incurs (i) in collecting or attempting to collect the indebtedness evidenced by this Note, (ii) in enforcing the deed of trust that secures this Note, (iii) in protecting the collateral encumbered by that deed of trust, or (iv) in defending or asserting the holder's rights in that collateral.

\* \* \* \*

PRESENTMENT, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors, and endorsers hereof.…

THE INDEBTEDNESS evidenced by this note is secured by a Deed of Trust of even date conveying certain real property in Anderson County, Tennessee, as therein described, as security for this debt, and the provisions of said Deed of Trust are incorporated herein by reference.…

A hearing was held in October of 2001 on Plaintiff's request for a temporary injunction prohibiting Defendant from evicting her from the property. The Trial Court's order entered after the hearing denied Plaintiff's request and the case was set for trial. The denial of Plaintiff's request for temporary injunctive relief is not at issue in this appeal.

The trial was on November 25, 2002, and began with Plaintiff stipulating that her signatures on the Note and the Deed of Trust were genuine. Plaintiff then was called as the first witness. Plaintiff testified to her version of events surrounding the signing of the Note and whether or not she received any consideration for entering into that contract. According to Plaintiff, while she and Defendant were dating, he bought her "lots of gifts" and they would go on vacations, etc. Some of the "gifts" included: (1) Defendant's making repairs to Plaintiff's house without her requesting that he do so; (2) paying for car repairs; (3) the purchase of a car which Plaintiff claims she never really wanted and eventually returned to Defendant; (4) a joint checking account established by Defendant on which Plaintiff wrote checks from funds deposited by Defendant; and (5) a credit card in Plaintiff's name but under Defendant's primary account for which Defendant ultimately was responsible. According to Plaintiff, Defendant "insisted" that she use the credit card and he never told her that he expected to be repaid for any charges she incurred. Plaintiff then explained the reason Defendant insisted she use the credit card was because they were dating and Defendant "was wanting it to become a permanent relationship, he kept saying that I was an investment in his future." Plaintiff claimed she never was told she would be expected to repay Defendant. "If I had been told that, I would never have dated him."

Plaintiff testified that the Note admitted into evidence at trial contained her signature, but it was not the Note she really signed. Plaintiff stated that the Note she actually signed contained a statement to the effect that if she did not file for bankruptcy or take any other action by January 1,

1999, then the Note would become null and void. The Note admitted into evidence by Defendant did not contain this statement. While Plaintiff acknowledged her signature was on the Deed of Trust, she claimed no memory of ever having signed that document.

After Plaintiff concluded her proof, Defendant orally moved to have the case dismissed. In denying the motion, the Trial Court stated Plaintiff's "only issue is consideration … but the issue of consideration; was it a gift, remains an issue." Based on the comments made by the Trial Court when overruling Defendant's motion, it certainly believed the only issue at trial was whether there was sufficient consideration supporting the Note since no mention was made about any other issue(s).

Not surprisingly, Defendant's version of events was quite different from Plaintiff's. Defendant testified to the various bills he claimed to have paid on Plaintiff's behalf. For example, Defendant described at least one occasion where he paid Plaintiff's utility bills in cash so her electricity and gas would not be turned off. After these bills were paid, Plaintiff told Defendant that she would repay him. Defendant cosigned a note to enable Plaintiff to buy a car. When Plaintiff was unable to make the payments, Defendant paid off the car note so his credit would not be adversely affected. Defendant testified he paid $1,300 in cash to have Plaintiff's car repaired and $300 to have her father's car repaired. Defendant also claims to have given Plaintiff $1,300 in cash for expenses incurred by Plaintiff's son. According to Defendant, he also paid credit card charges made by Plaintiff and for repairs to Plaintiff's parents' house.

Defendant testified that prior to Plaintiff's signing the Note, they discussed the various payments for which Defendant expected to be repaid and they both agreed Plaintiff owed him in excess of $15,000. Defendant testified he then told Plaintiff that "I had a great deal of money already invested in it and I needed securities on it. And that is why we agreed on the fifteen thousand dollars and the only tangible asset she had was her house." Because Plaintiff's mother was ill and Plaintiff was working only part-time, Defendant agreed that Plaintiff would not have to start repaying any money until January 1, 1999, and this provision was incorporated into the Note. Thereafter, both of Plaintiff's parents became very ill and eventually passed away. Defendant testified that he did not feel it appropriate to seek repayment from Plaintiff during those difficult times, so he waited until the beginning of 2001 before he sought repayment. Defendant testified that the purpose of the Note and Deed of Trust was to secure Plaintiff's debt to him in the agreed upon amount of $15,000. According to Defendant, he had given Plaintiff gifts and their value was not included in the $15,000 because he did not expect repayment for any gifts.

After the testimony was completed, the Trial Court issued a ruling from the bench, stating as follows:

> The Court has heard this on two occasions and was convinced at the early hearing that the deed of trust and note bore the signatures of Ms. McBee. They have been stipulated here today. The Court finds that those documents were executed, they are valid and existing

and the Court finds that the parties, that funds, monies, had been advanced, were recognized by the parties and that fifteen thousand dollars was the amount agreed upon by the parties to reimburse Mr. Nance for monies advanced to Ms. McBee. That there was good and valuable consideration, that these documents are valid and binding and enforceable and the complaint filed by Ms. McBee is dismissed.

A few weeks after the trial was completed, the Trial Court entered its final Judgment which states: "[T]he Court finds that the Promissory Note dated July 20, 1998 and the Deed of Trust dated August 11, 1998 are authentic documents, that the documents were signed by the Plaintiff, and that the Plaintiff received full and valuable consideration for the execution of the Promissory Note … [and] the Complaint is dismissed …. "

Plaintiff appeals *pro se* raising the following issues, which we quote:

1.      Did the Chancellor commit reversible error in finding that sufficient consideration was present to support the promissory note?

2.      Did the Chancellor commit reversible error by failing to find or otherwise address the issue that the defendant failed to give the plaintiff notice before foreclosing on the plaintiff's home?

3.      Did the [Chancellor] commit reversible error by failing to find or otherwise address the issue that the consideration for the foreclosure sale was inadequate?

## Discussion

The factual findings of a trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Initially we will discuss Plaintiff's claim that the Trial Court erred when it found there was sufficient consideration to support the Note. In the recent case of *Smith v. Riley*, No. E2001-00828-COA-R3-CV, 2002 Tenn. App. LEXIS 65 (Tenn. Ct. App. Jan. 30, 2002), *appl. perm. appeal denied* Sept. 16, 2002, this Court discussed the adequacy of consideration as follows:

It is a well-settled principle of contract law that in order for a contract to be binding, it must, among other things, be supported by sufficient consideration. *See Doe v. HCA Health Services of*

*Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). In expounding on the adequacy of consideration, the Tennessee Supreme Court has stated that

> [i]t is not necessary that the benefit conferred or the detriment suffered by the promisee shall be equal to the responsibility assumed. Any consideration, however small, will support a promise. In the absence of fraud, the courts will not undertake to regulate the amount of the consideration. The parties are left to contract for themselves, taking for granted that the consideration is one valuable in the eyes of the law.
>
> *Danheiser v. Germania Sav. Bank & Trust Co.*, 137 Tenn. 650, 660-61, 194 S.W. 1094, 1096 (1917). Quoting the United States Supreme Court, the Tennessee Supreme Court went on to state that "[a] stipulation in consideration of $1 is just as effectual and valuable a consideration as a larger sum stipulated for or paid." *Id.* (quoting *Lawrence v. McCalmont*, 43 U.S. (2 How.) 426, 452, 11 L. Ed. 326 (1844)). Indeed, the consideration of love and affection has been deemed sufficient to support a conveyance. *See Thomas v. Hedges*, 27 Tenn. App. 585, 593, 183 S.W.2d 14, 17 (1944).

*Smith*, 2002 Tenn. App. LEXIS 65, at **8-9.

In the present case, Plaintiff is under the misapprehension that the consideration for the Note must equal the amount of indebtedness, i.e. $15,000, in order for the consideration to be deemed adequate. As set forth above, that is not the law. When rendering its Judgment the Trial Court obviously credited the testimony of Defendant over that of Plaintiff when concluding the Note was supported by "full and valuable" consideration, namely funds loaned or "advanced" to Plaintiff. The Trial Court did not credit Plaintiff's testimony that those funds were intended by Defendant to be gifts. "Unlike this Court, the trial court observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The trial court's determinations regarding credibility are accorded considerable deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "'[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). In a nutshell, Plaintiff argues that "most of the things she received from the defendant were gifts" and therefore cannot count as consideration. This is nothing more than asking us to believe her over Defendant, but we will not undertake to reassess witness credibility unless there is clear and convincing evidence to the contrary. We conclude there is no clear and convincing evidence to the contrary, and affirm the Trial Court's Judgment insofar as it concluded there was adequate consideration to support the Note.

Plaintiff's next two issues center around the propriety of the foreclosure sale itself. Plaintiff argues that she did not receive proper notice of the foreclosure sale and the value of her home far exceeded what the house sold for at foreclosure. Plaintiff claims the Trial Court committed reversible error when it failed to address these two issues.

Based upon our review of the complaint and the rest of the record, we find that Plaintiff did not raise these issues or otherwise put them at issue at the trial court level. It is apparent that throughout the trial, the Trial Court correctly never believed Plaintiff was challenging the validity of the foreclosure based on lack of notice or an inadequate price at the foreclosure, and, therefore, properly never addressed these issues. Plaintiff's final two issues were not raised in the Trial Court according to the record before us. "It is well-settled that issues not raised at trial may not be raised for the first time on appeal." *Dept. of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996) (citations omitted). Therefore, Plaintiff cannot challenge the validity of the foreclosure in this appeal, except for her issue that the foreclosure was invalid because there was no consideration to support the promissory note itself. "No" is the answer to Plaintiff's issues two and three.

## Conclusion

The Judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, Mickie R. McBee, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE