IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 22, 2005 Session

## VIRGINIA STARR SEGAL v. UNITED AMERICAN BANK, DAVID CHARLES SEGAL, MARTIN GRUSIN, and RHONDA DILEONARDO

An Appeal from the Chancery Court for Shelby County
No. 108413-2     Arnold B. Goldin, Chancellor

No. W2004-02347-COA-R3-CV - Filed December 28, 2005

This is an action for conversion involving two ex-spouses. The wife was the lone signatory on two trust accounts for their daughters. Without authorization from the wife, the defendant bank transferred all of the funds in both trust accounts to the husband's account. The wife then filed this lawsuit for conversion, fraud and breach of fiduciary duty against the bank, the bank employee who transferred the funds, and the husband. The defendants filed motions for summary judgment. As part of the plaintiff wife's response, she admitted that she originally put the money into the trust accounts in order to defraud creditors during their divorce. The trial court granted summary judgment to the defendants, based in part on the doctrine of unclean hands. The plaintiff wife appeals. We affirm, finding that the trial court properly applied the doctrine of unclean hands.

**Tenn. R. App. P. 3 Appeal; Judgment of the Chancery Court is affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Ed M. Hurley, Memphis, Tennessee, for Appellant Virginia Starr Segal.

Tim Wade Hellen, Memphis, Tennessee, and Georgia A. Robinette, Memphis, Tennessee, for Appellees United American Bank and Rhonda DiLeonardo.

James W. Surprise, Memphis, Tennessee, for Appellee David Charles Segal.

**OPINION**

The actions giving rise to this litigation took place during the divorce of Plaintiff/Appellant Virginia Starr Segal ("Wife") and Defendant/Appellee David Segal ("Husband"). On September 19, 1990, Wife opened two trust accounts at Defendant/Appellee United American Bank ("Bank") for Husband and Wife's two daughters, Lisa Ellen Segal (D.O.B. 6/5/75) and Shelly Segal (D.O.B. 3/27/79). The signature cards for the accounts designated Shelly and Lisa Segal as the respective

"Owners" of each account, and designated Wife as the children's "Guardian" and as a "Joint Owner/Additional Authorized Signatory." Wife was the only authorized signatory on both accounts. On the day she opened them, Wife deposited $5,000 into each account.

In January 1996, while in the throes of her divorce from Husband, Wife took advances on credit cards in the joint names of Husband and Wife. These advances totaled some $28,000. Wife would later explain that the $28,000 advances were necessary for her living expenses during the divorce. On January 29, 1996, Plaintiff deposited the $28,000, minus $500 in cash, into Shelly Segal's trust account at the Bank. After the deposit, Shelly Segal's trust account contained $34,858.91, and Lisa Segal's trust account contained $9,285.40.

On February 2, 1996, Husband opened two new custodial accounts at the Bank in the names of Shelly R. Segal, Minor, and Lisa Ellen Segal, Minor. Husband was listed as the guardian on both accounts. That same day, Husband approached Defendant/Appellee Rhonda DiLeonardo, a Bank employee, and requested that she transfer the $34,858.91 in the trust account in the name of Shelly Segal and Wife, as well as the $9,285.40 in the trust account in the name of Lisa Segal and Wife, to the new accounts that Husband had set up for Shelly and Lisa Segal. This was done without the knowledge or consent of Wife. Without notifying Wife or acquiring her authorization for the transfer, Ms. DiLeonardo transferred the funds. Husband then used the funds to repay the debt to the credit card company created when Wife drew the $28,000 advance on the couple's credit card.

On October 24, 1996, Plaintiff filed a lawsuit in the Shelby County Chancery Court against Husband, the Bank, Martin Grusin,[1] and Bank employee Rhonda DiLeonardo. The complaint alleged that the funds were withdrawn as a result of a conspiracy between Ms. DiLeonardo and Husband. It alleged fraud, conversion, and breach of fiduciary duty. Wife sought compensatory damages in the amount of $44,144.31, representing the amounts allegedly converted from her accounts, and $100,000 for breach of fiduciary duty, outrageous conduct, and extreme emotional and mental anguish. In addition, Wife sought punitive damages in the amount of $500,000, alleging that, collectively, the Defendants acted willfully, maliciously, deliberately, and outrageously.

In their answer, the Defendants admitted that the sums were withdrawn from Wife's trust accounts pursuant to Husband's request, but denied any conspiracy, fraud, or breach of fiduciary duty. As an affirmative defense, the Defendants asserted that Wife failed to state a claim upon which relief could be granted because the accounts actually belonged to the daughters, not Wife, and that only the daughters or someone acting on their behalf could seek to recover the funds. Consequently, according to the defendants, Wife lacked standing to file the lawsuit.

Wife moved for partial summary judgment, arguing that, as a matter of law, she was entitled to damages for the improper transfer of the funds. After that, daughters Shelly Segal and Lisa Segal (collectively "Daughters") moved to intervene as parties plaintiff in the cause. The Daughters

_____

[1]Martin Grusin's involvement in this litigation stemmed from his status as an attorney for, and former officer of, the Bank. Wife's claim against Grusin was eventually dismissed with prejudice.

alleged that they were the real parties in interest with respect to the monies in the trust accounts. Shelly Segal attached an affidavit to the motion to intervene. In her affidavit, Shelly Segal claimed that she was aware of the transfers pursuant to Husband's request and did not object to the $27,500 amount being used to pay back the marital debts created when Wife took the $28,000 in advances on the marital credit cards.

After being permitted to intervene, the Daughters filed a motion to dismiss Wife's complaint. The motion to dismiss argued that Wife lacked standing to sue because the Daughters were the legal owners of the trust accounts and, at the time of the filing of the motion to dismiss, both were adults. Wife's response argued that the Daughters were not the legal owners of the funds because they were both minors when the accounts were originally created. The trial court denied the Daughters' motion to dismiss Wife's lawsuit, finding that the motion was "premature at this time because the pleadings state a sufficient cause of action which warrants a trial of this matter."

On July 8, 1998, the Defendants collectively filed a motion for summary judgment, arguing that Wife was unable to establish any damages because she was not the owner of the accounts in question. Wife's response to the motion asserted that she was the owner of the accounts in question and denied the contention that she suffered no damage as a result of the unauthorized transfer. On March 17, 1999, Chancellor Floyd Peete denied the Defendants' motion for summary judgment. He did not elaborate on the reasons for his ruling.

In the following several years, Chancellor Peete died and Chancellor Arnold Goldin assumed the bench. The proceedings in the divorce between Husband and Wife proceeded. Nearly five years after the Defendants' original motions for summary judgment were denied, on January 9, 2004, the Bank and Rhonda DiLeonardo filed another motion for summary judgment. Similar to the 1998 motion for summary judgment, this motion argued that the Wife was not the owner of the funds in the Bank trust accounts and suffered no damages as a result of the unauthorized transfers. The movants attached a Rule 56 list of undisputed facts to their summary judgment motion. In it, the movants referred to both the signature cards and Rhonda DiLeonardo's deposition to demonstrate that Wife was not the owner of the funds in the Bank accounts. Additionally, the movants relied upon Wife's deposition testimony in the divorce action against Husband, in which she stated that the money she placed in the Bank accounts for the Daughters was a gift to the Daughters. Other deposition testimony from the Wife indicated that the funds were reported on the Daughters' tax returns, not the Wife's.

On February 26, 2004, Wife filed her response to the Defendants' motion for summary judgment. Wife argued that (1) the establishment of the Bank accounts was not intended as a gift for the Daughters, but instead "was a way to hide and prevent funds from getting in the hands of judgment creditors," (2) she did not authorize the Bank's transfer of the funds, and (3) she was the only person authorized to withdraw any funds from the accounts because she was the owner of the accounts. Additionally, Wife argued that there was a fact question as to whether she was the owner of the funds that she originally deposited in the Bank accounts.

With her response, Wife filed an affidavit setting forth the facts regarding her establishment of the Bank trust accounts, the subsequent deposits made into the accounts, the circumstances surrounding the unauthorized transfer of those funds, and Husband's disposition of those funds once the Bank transferred the monies to him. In her affidavit, Wife stated as follows:

> I set up these accounts on the advice of my lawyer, Ted Winestone. We were aware that judgments could be handed down against me by creditors of my father's business. . . . These accounts were, I admit, a ruse. I never intended that these funds would go to my children.

Thereafter, Husband filed his own motion for summary judgment. The statement of undisputed facts submitted by Husband was nearly identical to that submitted by the other Defendants. Wife's response was also identical with one notable exception. In Wife's affidavit accompanying her response to Husband's motion for summary judgment, her explanation regarding her purpose for establishing the accounts, set forth above, was omitted.

On March 5, 2004, the trial court entered an order granting the motion for summary judgment filed by the Bank and Bank employee Rhonda DiLeonardo. The trial court concluded that the Defendants Bank and Rhonda DiLeonardo were entitled to a judgment, as a matter of law, based on the doctrine of unclean hands. The trial court explained its ruling:

> Virginia Segal relied upon her Affidavit filed in this cause on or about February 26, 2004. In that Affidavit, Virginia Segal states 'These accounts were, I admit, a ruse' and that the accounts were a fraud to defeat judgment creditors. It is axiomatic in a court of equity that 'he who does inequity shall not have equity.' Virginia Segal should not have the aid of this Court in furthering her fraudulent intent. The actions complained of. . .have not caused injury to Virginia Segal and she is not entitled to any relief. . .as a matter of law.

On September 7, 2004, the Chancery Court granted Husband's motion for summary judgment as well.[2]

On appeal, Wife argues that the trial court erred in granting the Defendants' motions for summary judgment. Wife asserts that the Bank illegally transferred the funds in the Daughters' accounts to Husband, and that Husband was without authorization to remove the funds. The Defendants respond that the trial court properly applied the doctrine of unclean hands in holding that, as a matter of law, Wife was not entitled to relief.

The summary judgment process is designed to provide an efficient and inexpensive mechanism for disposing of cases; the rules provide a procedure "to enable the courts to pierce the

---

[2] After the trial court had granted all of the Defendants' motions for summary judgment, the Daughters voluntarily dismissed their claims.

-4-

pleadings to determine whether the case justifies the time and expense of trial." ***Byrd v. Hall***, 847 S.W.2d 208, 210 (Tenn. 1993). Summary judgment is appropriate only when the moving party demonstrates (1) that there are no genuine issues of material fact requiring resolution, and (2) that she is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; ***Christenberry v. Tipton***, 160 S.W.3d 487, 491–92 (Tenn. 2005); ***Byrd***, 847 S.W.2d at 210. Because summary judgment is granted only when there are no genuine issues of material fact, a trial court's grant of a motion for summary judgment presents a legal, not factual, question for this Court. *See, e.g.,* ***Eadie v. Complete Co.***, 142 S.W.3d 288, 291 (Tenn. 2004); ***Goodloe v. State***, 36 S.W.3d 62, 65 (Tenn. 2001). Consequently, the standard for reviewing a grant of summary judgment is *de novo*, with no presumption of the correctness of the trial court's legal conclusions. ***Christenberry***, 160 S.W.3d at 491.

In this case, the Chancery Court determined that Plaintiff/Appellant Virginia Segal was not entitled to relief from the court, as a matter of law, in light of her admittedly fraudulent purpose for establishing the Bank trust accounts in the Daughters' names. This conclusion was rooted in a fundamental tenet of Courts of equity—the doctrine of unclean hands. It derives from the equitable maxim stated succinctly in the treatise, *Gibson's Suits in Chancery*: "He who comes into equity must come with clean hands." ***Thomas v. Hedges***, 183 S.W. 2d 14, 16 (Tenn. Ct. App. 1944) (citing *Gibson's Suits in Chancery*, 42 and 51); *see also,* ***C.F. Simmons Medicine Co. v. Mansfield Drug Co.***, 23 S.W. 165 (Tenn. 1893). The doctrine was discussed by the Tennessee Supreme Court in an opinion authored nearly two hundred years ago:

> If a complainant's cause of action originates in iniquity, although he may have the right, as against his antagonist, the court of chancery will turn him out without relief, because it will not give its aid to the establishment and enforcement of a right so stained with sin.

***Goodwin v. Hunt***, 1832 WL 1108, at *1 (Tenn. Err. & App. March 1832); *see also,* ***Sartain v. Dixie Coal & Iron Co.***, 266 S.W. 313, 316 (Tenn. 1924). The principle behind the doctrine remains unchanged:

> The principle is general, and is one of the maxims of the Court, that he who comes into a Court of Equity asking its interposition in his behalf, must come with clean hands; and if it appear from the case made by him. . .that he has himself been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

***Continental Bankers Life Ins. Co. of the South, Inc. v. Simmons***, 561 S.W.2d 460, 465 (Tenn. Ct. App. 1977) (citing ***C.F. Simmons Medicine Co. v. Mansfield Drug Co.***, 23 S.W. 165 (Tenn. 1893)).

In the instant case, Wife seeks to recover funds from accounts which, she admits, she established for a fraudulent purpose. While Wife, as the one authorized signatory on the accounts,

may have stated a valid claim for the Bank's unauthorized transfer of the funds, we cannot say that the Chancery Court erred in applying the doctrine of unclean hands to "repel" Wife "at the threshold of the court."

The decision of the trial court is affirmed. Costs of this appeal are assessed against Appellant Virginia Starr Segal, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE