# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 25, 2012

## STATE OF TENNESSEE *ex rel.* PATRICIA KIMBROUGH v. BRIAN HALES

### Direct Appeal from the Chancery Court for Carter County
### No. 19859      G. Richard Johnson, Chancellor

---

### No. E2011-02539-COA-R3-CV - Filed July 25, 2012

---

In 1991, the parties divorced via a Final Decree which decreed that the husband was not the father of the wife's expected child. In 2010, the State moved to establish the husband's paternity and for Rule 60.02 relief. The trial court denied the State's requests finding the 1991 paternity determination *res judicata*. Because we find the paternity provision void as against public policy, we find the trial court erred in dismissing the State's Motion to Establish Paternity and its motion for Rule 60.02 relief. The case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and HOLLY M. KIRBY, J., concurred separately.

Robert E. Cooper, Jr., Attorney General and Reporter, Marcie E. Greene, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee *ex rel.* Patricia Kimbrough

Kathryn J. Dugger-Edwards, Elizabethon, Tennessee, for the appellee, Brian Hales

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Patricia Marie Cowan Davis Hales (currently, "Ms. Kimbrough") and Brian Lee Hales ("Mr. Hales") were married on October 25, 1990. On May 17, 1991, Mr. Hales filed a Complaint for Divorce in the Carter County Chancery Court alleging that Ms. Kimbrough was guilty of inappropriate marital conduct. Specifically, Mr. Hales' Complaint alleged that the parties had no children, but that "[Ms. Kimbrough] is currently pregnant by another."

The matter was adjudicated swiftly; a hearing was held, and a Final Decree entered, on May 28, 1991. No transcript of the trial court proceedings is provided, but the Final Decree indicates that both Ms. Kimbrough and Mr. Hales testified at the May 28 hearing. Based upon the parties' testimony, the trial court found Ms. Kimbrough "guilty of inappropriate marital conduct which has rendered cohabitation unsafe and improper[,]" and it declared the parties divorced. The court further found, "based upon the sworn testimony of [Mr. Hales] and [Ms. Kimbrough,] that [Mr. Hales] is not the father of [Ms. Kimbrough's] expected child[,]" and the Final Decree "ORDERED, ADJUDGED AND DECREED that [Mr. Hales] is not the father of Defendant's expected child." Mother gave birth to a son ("the Child") on July 1, 1991. Mr. Hales apparently has had no relationship with the Child.

Eighteen years later, on July 10, 2009, the State of Tennessee, which had provided support services to Ms. Kimbrough for fifteen years, filed a Motion to Establish Paternity against Mr. Hales. The motion alleged that Mr. Hales was the Child's biological father and it requested, upon a denial of paternity, that he be ordered to submit to a paternity test. The motion erroneously identified the Child as a minor, and it sought entry of an order requiring Mr. Hales to pay current and retroactive child support; to maintain medical insurance coverage for the Child; to pay the costs of the birth of the Child; and to fund other "appropriate" expenses. Mr. Hales filed an Answer denying paternity, requesting a more definite statement as to the Child's date of birth, and pleading the affirmative defense of *res judicata* based upon the 1991 paternity determination. Additionally, Mr. Hales filed a Motion to Dismiss on the basis of *res judicata*.

The State responded to Mr. Hales' Motion to Dismiss and it filed a Tennessee Rule of Civil Procedure 60.02 Motion asserting that the Final Decree's paternity provision is void as against public policy because it relieved him of his obligation to provide child support, and therefore, that such provision must be set aside. It also argued that the paternity provision should be set aside because it was not based upon scientific testing, and it attached to its Motion a June 30, 2009 "DNA Test Report" which indicated a 99.999998% probability that Mr. Hales is the Child's biological father.

-2-

Mr. Hales then submitted his affidavit, as follows:

On May 28, 1991, I appeared before the Chancery Court for Carter County, Tennessee to obtain a divorce from [Ms. Kimbrough]. The sworn testimony was as follows: I and my ex wife, [Ms. Kimbrough], both raised our hands and w[ere] sworn to tell the truth. I then took the witness stand and [Ms. Kimbrough] sat at a table. My attorney stated to the Court that this was a divorce on the grounds of inappropriate marital conduct and that [Ms. Kimbrough] was pregnant by another and looked at me and said is this correct. I stated, "Yes" this is why I want a Divorce. The judge then looked at [Ms. Kimbrough] and said to [Ms. Kimbrough] "Is this true[?]" And she said yes[,]" and the audience went ooh ooh ooh, and [Ms. Kimbrough] held her head down. The judge also ask[ed] her "you are not going to come back on him later and say he's the father, are you?" She said "no[.]" The Judge granted the divorce and told me to have a good life.

On July 7, 2010, a hearing was held in the Carter County Chancery Court on the the State's Motion to Establish Paternity, Mr. Hales' Motion to Dismiss, and the State's Rule 60.02 Motion.[1] Thereafter, the Chancery Court entered an Order of Dismissal which included the following factual findings:

This is an action instituted by the State of Tennessee ex rel. Patricia Kimbrough vs. Brian L. Hales to determine parentage of Mrs. Kimbrough's child, [] born out of wedlock on July 1, 1991. The Court finds that Mr. Hales and Mrs. Kimbrough were married on October 25, 1990. Mr. Hales filed for Divorce in this Court on May 17, 1991. Mr. Hales wanted a Divorce from his wife due to the fact that she was pregnant by another man. The divorce was heard . . . in the Chancery Court on May 28, 1991. Both parties were sworn and gave testimony at this hearing. Mrs. Hales (now Mrs. Kimbrough) stated while under oath that Mr. Hales was not the father of her expected child. A Final Decree was signed by [the judge] and signed by Mrs. [Kimbrough]. The Final Decree stated "Plaintiff is not the father of the Defendant's expected child." The Final Decree was entered on May 28, 1991. On July 1, 1991 Ms. Hales Kimbrough gave birth to [the Child]. The child was born out of wedlock.

The Court finds that nineteen years later the State of Tennessee ask[s] for Rule

---

[1]Additionally, the court considered the State's motions to appoint a guardian ad litem for the Child and to add the Child as a party to the action. The motions were denied and are not appealed.

60.02 relief from the judgment of Final Decree of Divorce set forth in the Final Decree of Divorce. The State of Tennessee now seeks to establish parentage of Mrs. Kimbrough's child and seeks support for Mrs. Kimbrough and the State of Tennessee seeks reimbursement of [its] money paid to Mrs. Kimbrough. Petitioner now avers that Mr. Hales is the father of Mrs. Kimbrough['s] child, born July 1, 1991. The Court finds that the State of Tennessee has paid assistance to Mrs. Kimbrough for fifteen years and the State now wants its money back. . . .

This case involved a divorce where the grounds were that the wife was pregnant by another. The wife admitted, while under oath, to an adulterous affair. The Court finds that Mrs. Kimbrough lied to the court in 1991, as the recent paternity testing shows that now Mr. Hales cannot be excluded as the father with a probability of paternity of 99.998%. Mrs. Kimbrough by her lies denied Mr. Hales 18 years of a relationship with his child.

. . . .

The Court further finds that Mr. Hales did not lie or commit a fraud upon this Court in 1991. The only thing he did not know was who is the father of his wife's child; this is because Mrs. Kimbrough stated in Court that he (Mr. Hales) was not the father of her expected child. Mr. Hales['] hands are not unclean, he did not lie and he did not commit perjury and there is absolutely no evidence that Mr. Hales intended to deceive this court in any way.

In its Order of Dismissal, the trial court declined to void the Final Decree's paternity provision, as against public policy. Instead, it found that *Ms. Kimbrough* had acted contrary to public policy by giving false testimony at the divorce trial. Additionally, the trial court determined that the State's paternity action was barred by *res judicata* and that Ms. Kimbrough was judicially estopped from denying her "adamant" 1991 statement that "Mr. Hales was not the father of her expected child[.]" The trial court denied the State's request for Rule 60.02 relief because it found that the State had not asserted its "void" judgment argument within a reasonable time, that Tennessee Code Annotated section 36-2-304(b)(4)[2]

_____

[2]Tennessee Code Annotated section 36-2-304(b)(4), enacted in 1997, provides:

In any case, except terminations of parental rights or adoptions under this title or title 37, in which the paternity of a child is at issue and an agreed order or divorce decree has been entered finding that an individual is not the parent of the child, the finding shall not be entitled to preclusive effect unless the finding was based upon scientific tests to determine

(continued...)

should not be applied retroactively, and that Ms. Kimbrough's perjured testimony–"that Mr. Hales was not the father of her expected child and . . . that she would not come back on Mr. Hales later and claim that Mr. Hales was the father"–left her with "unclean hands."

Thereafter, the State filed a motion to alter or amend the Order of Dismissal and/or for a new trial, which the trial court denied. The State timely appealed to this Court. No transcript or statement of the evidence was filed.

## II. ISSUES PRESENTED

The State presents the following issues for review:

1.      Whether the Chancery Court erred in failing to set aside the portion of the divorce decree that is against public policy; and

2.      Whether the Chancery Court erred in dismissing the State's petition to establish paternity.

For the following reasons, we find the trial court erred in dismissing the State's Motion to Establish Paternity and in denying its motion for Rule 60.02 relief. The case is remanded for further proceedings consistent with this opinion.

## III. STANDARD OF REVIEW

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. ***In re M.L.D.***, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) (citing *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995)). Because no transcript or statement of the evidence has been filed in this case, "we must conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct." ***Id.*** (citing *J.C. Bradford & Co. v. Martin Constr. Co.*, 576 S.W.2d 586, 587 (Tenn. 1979)). However, we attach no presumption of correctness to the trial court's conclusions of law. ***Id.*** (citing Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). We review for abuse of discretion, a trial court's ruling on a motion for relief pursuant to Rule 60.02. ***Discover Bank v. Morgan***, 363 S.W.3d 479, 487 (Tenn. 2012) (citing *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003)). An abuse of discretion will be found only where the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice

_____

[2](...continued)
parentage that excluded the individual from parentage of the child in question.

to the complaining party." ***Arias v. Duro Standard Prods. Co.***, 303 S.W.3d 256, 262 (Tenn. 2010) (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

## IV. DISCUSSION

On appeal, the State argues that the trial court erred in dismissing its Motion to Establish Paternity and in declining to extend Rule 60.02 relief. Specifically, the State contends that the trial court erroneously determined that *res judicata* bars the State's Motion to Establish Paternity because, the State claims, Mr. Hales has failed to prove that the 1991 action and the current action involve both the same parties and the same cause of action. Alternatively, the State argues that *res judicata* is inapplicable to void judgments, and it argues that the underlying 1991 paternity determination is void because it relieved Mr. Hales of his obligation to pay child support. Finally, the State maintains that the trial court, in failing to construe the 1991 paternity determination as void, wrongfully denied Rule 60.02 relief by improperly applying established legal principles. Mr. Hales, of course, argues that the trial court correctly concluded that the paternity determination was not violative of public policy and that *res judicata* attached to such determination. Additionally, Mr. Hales contends that Rule 60.02 relief was appropriately denied to the State on other grounds, namely, that the motion was not made within a reasonable time, that Tennessee Code Annotated section 36-2-304(b)(4) should not be applied retroactively, and that equitable principles preclude Ms. Kimbrough's current assertion that Mr. Hales is the Child's father.

### *A. Public Policy*

First, we address the State's argument that the 1991 paternity determination set forth in the Final Decree violates public policy, and therefore, is void. The State relies upon several cases in support of this argument including *Witt v. Witt*, 929 S.W.2d 360 (Tenn. Ct. App. 1996). *Witt* involved a situation similar to the instant case. The parties were married in 1987, and a child was born during the marriage. ***Id.*** at 361. In 1989, the husband filed for divorce, and shortly thereafter, the trial court entered an order dissolving the marriage and approving a marital dissolution agreement, which contained the following language:

> The parties stipulate and agree that a child was born to [Wife] on or about July, 1988. . . . By her signature to this agreement, [Wife] hereby states that [Husband] is not the father of said child and that she was not living with [Husband] when said child was conceived. [Wife] hereby waives any and all child support payments which would be due and owing by [Husband,] and by this agreement and signature hereto, [Husband] acknowledges that he is not the father of said child and hereby forfeits all parental rights to said child. Based

upon this agreement and the signatures of the parties, the parties stipulate and agree that [Mother] shall have the exclusive care, custody and control of said minor and that [Husband] is hereby forever relieved of any parental responsibilities toward the [child].

*Id.* Following the divorce, Wife received benefits from the State, and the State subsequently filed an action to establish Father's paternity of the child. *Id.* The trial court set aside the judgment's paternity provision, pursuant to Rule 60, and ordered blood tests, which revealed that Husband was the child's biological father. Husband appealed the trial court's entry of Rule 60 relief without an evidentiary hearing. *Id.* at 362. However, this Court deemed void the paternity provision at issue, and therefore, we found it unnecessary to address the issue presented by Husband. Emphasizing this state's "abundantly clear" public policy "since time immemorial . . . that a parent is under a duty to support his children," we found that "agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly." *Id.* at 362-63.

The State also relies upon *State ex rel. West v. Floyd*, No. M1999-00334-COA-R3-CV, 2001 WL 356274 (Tenn. Ct. App. Apr. 11, 2001), which applied *Witt* retroactively. Like the instant case, the Husband in *West*, filed for divorce in the early 1990s claiming his Wife was pregnant by another man. *Id.* at *1. The parties entered into a Marital Dissolution Agreement which provided:

> The parties recognize and agree that, at the time of entering into this agreement, wife is pregnant with a child, and the Plaintiff, husband, is not, in fact, the father of this child. Therefore, husband shall not have any rights to or obligations for said child, either prior to or subsequent to its birth, and the Defendant, wife, shall be solely responsible for all decisions relating to the care, welfare, and support and maintenance of said child.

*Id.* A Final Judgment was entered which incorporated the Marital Dissolution Agreement:

> It is further ordered and adjudged that [Husband] . . . is not the father of the child which the defendant, is now carrying, and [Husband] shall not have any rights to or obligations for said child, either prior to or subsequent to its birth, and the [Mother] shall be solely responsible for the support and maintenance of said child.

*Id.* at *2. A few months after the parties' divorce, the child was born. *Id.* In 1999, the State petitioned to establish paternity and, pursuant to Rule 60.02, to set aside the portion of the

parties' Marital Dissolution Agreement and divorce decree related to the then-unborn child. *Id.* at *3. The trial court, however, denied the State's requests. *Id.* at *4. On appeal, this Court reversed, finding that the paternity provisions set forth in the MDA and incorporated into the Final Judgment relieved a natural parent of child support obligations, and therefore, were void as against public policy. *Id.* at *5. Moreover, this Court rejected the Father's argument that a paternity agreement could be voided only if *both* parties committed a fraud upon the court. Citing the June 2000 amendment to Tennessee Code Annotated section 36-2-304(a)(4):

> In any case, except terminations of parental rights or adoptions under title 36 or title 37, in which the paternity of a child is at issue and the question of parentage arises, and an agreed order or divorce decree has been entered finding that an individual is not the parent of the child, the finding shall not be entitled to preclusive effect unless the finding was based upon scientific tests to determine parentage which excluded the individual from parentage of the child in question[,]

this Court noted that "[a]n examination of case law and statutory law reveals that the public policy of Tennessee and the clear intention of the Tennessee Legislature is that no child can be illegitimated by written agreement or court order, regardless of the passage of time." *Id.* at *6-7.

In the instant case, Mr. Hales argues, and the trial court found, that *Witt* and *West* are distinguishable because both cases involved a paternity *agreement* between the parties whereas this case involves only a *court ordered* paternity determination. While this is true, we find it is simply a distinction without a difference. Mr. Hales repeatedly asserts the agreement/court order distinction, but he fails to advance a *reason* for such. Finding none, we decline to restrict the application of *Witt* and *West*–and their prohibition against relieving a parent of his or her support duty–to situations in which a paternity agreement is reduced to writing prior to its incorporation into a court order. Because the Final Decree in this case effectively relieved Mr. Hales, an alleged natural parent,[3] of his parental obligations, we find the paternity provisions of the Final Decree are void as against public policy. Therefore, the trial court abused its discretion in denying Rule 60.02 relief from a void judgment.[4]

_____

[3]In his brief to this Court, Mr. Hales rejects the State's assertion that there has been a judicial determination of his paternity of the Child based upon a DNA test. Instead, Mr. Hales claims that the trial court did not address the paternity issue after it determined that the 1991 Final Decree was entitled to *res judicata* effect.

[4]On appeal, Ms. Kimbrough argues that Rule 60.02 relief was properly denied because the State's motion was not "made within a reasonable time[.]" **Tenn. R. Civ. P. 60.02**. We acknowledge the significant
(continued...)

-8-

## B. Res Judicata

Having deemed void, as against public policy, the Final Decree's paternity provisions, we now consider Mr. Hales' arguments that the State's Motion to Establish Paternity should, nonetheless, be dismissed on the basis of *res judicata*.

Res judicata is a doctrine of claim preclusion which "bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003) (citations omitted). A party asserting the res judicata defense must show "(1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that both proceedings involved the parties or their privies, and (4) that both proceedings involved the same cause of action." *Id.* (citing *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)).

We find no merit in Mr. Hales' argument that the Final Decree's paternity provision is entitled to *res judicata* effect. As this Court noted in *Witt*, where a parent is relieved of his or her parental obligations in violation of public policy, "the court may, *sua sponte*, set aside a void order or a void agreement incorporated within an order or decree." 929 S.W.2d at 362.

## C. Rule 60.02

Finally, we consider Mr. Hales' arguments that Tennessee Rule of Civil Procedure 60.02 relief was properly denied on other grounds.

### 1. Equitable Grounds

As stated above, the trial court found that Ms. Kimbrough was judicially estopped from denying her "adamant" 1991 statement that "Mr. Hales was not the father of her expected child[.]" "Judicial estoppel is an equitable doctrine designed to prevent parties from 'gaining an unfair advantage' in judicial proceedings by making inconsistent statements

---

[4](...continued)
passage of time between the entry of the Final Decree and the State's filing of its motion for Rule 60.02 relief. However, the State filed its Motion to Establish Paternity shortly after the DNA test allegedly revealed that Mr. Hales is the Child's biological father and it filed its motion for Rule 60.02 relief within the following year. Accordingly, we find that the trial court abused its discretion in focusing solely upon the time period between the Final Decree and the Rule 60.02 motion without consideration for the date of the DNA test results. *See Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001). In sum, we find the State's Rule 60.02 motion was made within a reasonable time.

on the same issue in different lawsuits." ***In re Estate of Boote***, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005) (citing *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999)). Judicial estoppel is inapplicable to "'anything short of a willfully false statement of fact.'" ***Id.*** (quoting *D.M. Rose & Co. v. Snyder*, 185 Tenn. 499, 520, 206 S.W.2d 897, 906 (1947)). "Statements made in prior proceedings will not prevent a litigant from establishing the truth in a later proceeding where the litigant can show that the prior statements were made 'inconsiderately, by mistake, or without full knowledge of the facts.'" ***Id.*** at 719-20 (citations omitted). The application of judicial estoppel presents a question of law, which we review *de novo*. ***Id.*** (citing *Carvell v. Bottoms*, 900 S.W.2 23, 30 (Tenn. 1995); *Terrell v. Terrell*, 200 Tenn. 289, 295-96, 292 S.W.2d 179, 182 (1956); *Bubis v. Blackman*, 58 Tenn.App. 619, 632-33, 435 S.W.2d 492, 498 (1968)).

The trial court also found Rule 60.02 relief inappropriate based upon the doctrine of unclean hands. Specifically, the court found that "Mrs. Kimbrough comes to court with unclean hands based upon her perjured testimony to the court in 1991 when she stated that Mr. Hales was not the father of her expected child and stated under oath to [the trial judge] that she would not come back on Mr. Hales later and claim that Mr. Hales was the father."

The doctrine of unclean hands states that "[h]e who comes into Equity must come with clean hands." ***Emmit v. Emmit***, 174 S.W.3d 248, 252 (Tenn. Ct. App. 2005) (quoting *Heylandt Sales Co. v. Welding Gas Products Co.*, 180 Tenn. 437, 175 S.W.2d 557, 561 (1943)). The doctrine "enables a court to prevent a party from profiting from her own misconduct." ***Id.*** (citing *McCallie v. McCallie*, 719 S.W.2d 150, 154 (Tenn. Ct. App. 1986)). "Decisions regarding the proper application of the doctrine of unclean hands are heavily fact-dependent and are addressed to the considerable discretion of the trial court." ***In re: Estate of Boote***, 265 S.W.3d 402, 417-18 (Tenn. Ct. App. 2007).

We conclude that the trial court erred in applying the doctrines of judicial estoppel and unclean hands. Although Ms. Kimbrough's paternity statement in the divorce proceeding was inconsistent with the statement she now attempts to assert, the trial court made no finding that her ostensibly false initial statement was made "willfully" or knowingly so as to support the application of the equitable doctrines asserted. Additionally, based upon public policy, we find that Mother's statement that she "would not come back on Mr. Hales later" does not preclude the relief sought.

### 3.  Tennessee Code Annotated section 36-2-304(b)(4)

Finally, the trial court deemed Rule 60.02 relief inappropriate based upon its determination that Tennessee Code Annotated section 36-2-304(b)(4) should not be applied

retroactively. The statute, which was enacted in 1997, provides that

> In any case, except terminations of parental rights or adoption under this title
> or title 37, in which the paternity of a child is at issue and an agreed order or
> divorce decree has been entered finding that an individual is not the parent of
> the child, the finding shall not be entitled to preclusive effect unless the
> finding was based upon scientific tests to determine parentage that excluded
> the individual from parentage of the child in question.

**Tenn. Code Ann. § 36-2-304(b)(4)**. The trial court found that to deny preclusive effect to
the 1991 non-scientific paternity determination would violate the prohibition against
retrospective laws which impair vested rights. Respectfully, we disagree with the trial
court's conclusion.

In *Cihlar v. Crawford*, No. M1999-00517-COA-R3-CV, 2000 WL 1183068 (Tenn.
Ct. App. Aug. 22, 2000), this Court addressed the issue of retrospective application of the
parenting statutes,[5] as follows:

> Tenn. Con. art. I, § 20 prohibits the General Assembly from enacting
> retrospective laws or laws that impair contractual obligations. The Tennessee
> Supreme Court has characterized a retrospective law as one that takes away or
> impairs vested rights acquired under existing laws. *See Morris v. Gross*, 572
> S.W.2d 902, 907 (Tenn. 1978); *Miller v. Sohns*, 225 Tenn. 158, 162-63, 464
> S.W.2d 824, 827 (1971). Although the characteristics of vested rights elude
> precise definition, the court views a vested right as one "which it is proper for
> the state to recognize and protect and of which the individual could not be
> deprived without injustice." *Morris v. Gross*, 472 S.W.2d at 905. It also
> adopted a multi-factor analysis for identifying vested rights that includes
> consideration of the following factors: (1) whether the public interest is
> advantaged or retarded by the challenged statute; (2) whether the challenged
> statute gives effect or defeats the affected person's bona fide intentions or
> reasonable expectations, and (3) whether the statute surprises persons who
> have long relied on a contrary state of the law. *See Doe v. Sundquist*, 2 S.W.3d
> 919, 924 (Tenn. 1999).

---

[5]*Cihlar* specifically considered retrospective application of Tennessee Code Annotated section 36-2-
305(b)(1)(C) which provides that a complaint to establish parentage may be filed by a man claiming to be
the child's father. The Court determined that the man married to the mother at the time of the child's birth
had no vested right in preventing the putative father from establishing that he was the child's biological
father. 39 S.W.3d at 186.

2000 WL 1183068, at *13.

On appeal, Mr. Hales contends that the above-cited factors weigh against retroactive application of section 36-2-304(b)(4). Specifically, he maintains that rejecting retroactive application would not affect the public interest because, based upon the 1997 enactment of the parentage statute, paternal exclusion now requires scientific testing. He also argues that he expected "that his grounds for divorce and his wife admitting to an adulterous affair and resulting pregnancy by another would exclude him as the father[,]" and that "he was surprised by results of the [DNA] testing as he has always relied upon the judicial determination that he has been excluded as the father."

In *West*, relying upon *Cihlar*, we rejected a similar argument by an alleged biological father that the prohibition against retrospective laws prevented him from being required to submit to genetic testing as requested by the State. *West*, 2001 WL 356274, at *7. Noting "five substantial interests supporting the requested genetic testing[,]" we determined that *Witt*–and its prohibition of agreements relieving parental obligations–could be applied retroactively and that "the parties never had the right under any law to illegitimate the child." *Id.* at *7-8. Applying this reasoning to the instant case, we find that Mr. Hales had no vested right in not being a parent and that he had no right to illegitimate his alleged child regardless of the passage of time. *See id*.

In sum, we find that the paternity provisions of the Final Decree are void as against public policy. The trial court erred in dismissing the State's Motion to Establish Paternity and in denying Rule 60.02 relief from a void judgment. This case is remanded for further proceedings consistent with this opinion.[6]

---

[6]We note that, on remand, when considering the issue of retroactive support, the trial court may consider "the equity between the parties," and if it finds the presumption of the application of the guidelines is rebutted by clear and convincing evidence it shall deviate from such guidelines to reduce or eliminate retroactive support. **Tenn. Code Ann. § 36-5-101(e)(1)(D)**.

## IV. CONCLUSION

For the aforementioned reasons, we find the trial court erred in dismissing the State's Motion to Establish Paternity and in denying its motion for Rule 60.02 relief. The case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellee, Brian Hales, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.